IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| REV. COLUMBA NNOROM, Ph.D. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: _____ |
| | ) |
| VIRGINIA UNION UNIVERSITY | ) |
| Serve: Hakim J. Lucas, Ph.D., President | ) |
|     Virginia Union University | ) |
|     1500 N. Lombardy Street | ) |
|     Richmond, VA 23220 | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Rev. Columba Nnorom, Ph.D. ("Rev. Nnorom"), by counsel, states as follows for his Complaint against defendant Virginia Union University ("Virginia Union," "VUU", or the "University").

### NATURE OF ACTION

1. This is an action for Title VII[1] discrimination and retaliation. In a nutshell, VUU, mainly through its former Dean of the School of Humanities and Social Sciences, Dr. Michael Orok, discriminated against Rev. Nnorom, who is black, from Nigeria, and an ordained minister, on the basis of race, color, national origin and religion in violation of Title VII. Specifically, after the only white student in Rev. Nnorom's Comparative Politics class complained about his teaching style (saying, for example, that it was too Afrocentric) and tried to incite other students to complain about him, VUU, through Dr. Orok, (i) removed Rev. Nnorom from classroom teaching without due process, (ii) falsely

---

[1] "Title VII" refers to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

1

called him a racist, (iii) referred to him derogatorily as a "Nigerian"; and (iv) ultimately, refused to offer him a new employment contract. VUU then retaliated against Rev. Nnorom for filing an EEOC charge against it by refusing to allow him to be on the VUU campus. As a result of these unlawful actions, Dr. Nnorom now files this action to hold VUU liable for its wrongdoing.

## PARTIES

2. Nnorom is an individual resident of Richmond, Virginia. He is black, from Nigeria, and an ordained minister.

3. VUU is a private university located at 1500 N. Lombardy Street, Richmond, Virginia. It employs more than 200 people and is an "employer" for purposes of Title VII.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391, as this is the district and division where a substantial part of the events or omissions giving rise to the claim occurred.

## FACTUAL BACKGROUND

6. Rev. Nnorom was born in Nigeria.

7. In 1999, Rev. Nnorom became an Adjunct Professor at Virginia Union where he taught International Relations. In doing so, Rev. Nnorom, as someone born in Nigeria, gave his students unique insight into global politics based on his personal experiences and knowledge.

8. After taking a hiatus from VUU, Rev. Nnorom returned to the University in January 2015. At that time, he began teaching such classes as American Government and

International Relations, at least one of which he taught through the Spring of 2018. At no point during the time he taught those classes did Rev. Nnorom have any problems with his students following his classroom Code of Conduct (which he distributed to his students at the beginning of each semester) and at no point during this time did any student file any complaint against him.

9. In January of 2018, VUU assigned Rev. Nnorom to teach, among others, Comparative Politics. As he had done with all of his previous classes, Rev. Nnorom distributed his classroom Code of Conduct to his students.

10. On February 16, 2018, right before the class was supposed to take a quiz, KK, the only white student in Rev. Nnorom's Comparative Politics class, began to disrupt the class by complaining about textbook summaries that Rev. Nnorom had provided to the students at the start of the semester. She then went further, encouraging other students to join her in complaining about the summaries and trying to incite them (using hand gestures) to complain about Rev. Nnorom. Finally, at the end of that class, KK approached Rev. Nnorom, leaned into his face and said she was not happy with the class. Among other things, she reminded Rev. Nnorom that she is active-duty military (as if to intimidate Rev. Nnorom); she complained about the Afrocentric nature of his teaching style; and she threatened to go to the Dean with her complaints.

11. Soon thereafter, that's precisely what KK did – complaining later that day to Dr. Michael Orok, the then-Dean of VUU's School of Humanities and Social Sciences. KK's action in going directly to the Dean is a breach of VUU policy and protocol regarding student complaints. To the contrary, VUU policy requires that the student first try to resolve things with the professor; then, if that is not successful, the complaint should be elevated to the Chairman of the Department. Here, the Chairman was entirely excluded from this process

as to KK's complaint, thereby improperly transforming what should have been a minor, classroom-based issue into a much larger concern.

12. As a result of KK's complaint, Dr. Orok met with Rev. Nnorom and belittled him. Among other things, he criticized Rev. Nnorom's teaching, questioned his academic and intellectual abilities, called him an "uncivilized Nigerian," and bizarrely warned him not to retaliate against the students. Then, without conducting any investigation into the incident at issue and with no due process, Dr. Orok pulled Rev. Nnorom from the classroom and refused to allow him to continue to teach Comparative Politics class. Instead, Dr. Orok assigned the Department Chair to finish out the semester.

13. During this same time – that is, when Rev. Nnorom was not allowed to teach his former students – Dr. Orok falsely told Rev. Nnorom's students that he had used a racial slur during their meeting about KK's complaint. The apparent purpose for conveying this false information was to denigrate Rev. Nnorom and to lend credibility to his own decision to remove him from teaching the class.

14. As a result of the incident, VUU, at Dr. Orok's recommendation, declined to issue a new contract to Rev. Nnorom after the Spring 2018 semester, at which point Rev. Nnorom became unemployed. The University did this even though it had offered him a semester contract for each of the prior five academic semesters.

15. As a result of VUU's conduct, Rev. Nnorom filed an EEOC charge, alleging various forms of discrimination.

16. After Rev. Nnorom filed his charge, VUU issued a directive that Rev. Nnorom was not allowed to be present on the VUU campus. As a result of this action, Rev. Nnorom filed a second EEOC charge alleging retaliation against VUU.

17. Since his unlawful separation from VUU, Rev. Nnorom has been unable to find a comparable full-time employment.

18. In addition, Rev. Nnorom has suffered substantial stress, anxiety, and emotional distress as a result of VUU's actions.

19. Rev. Nnorom has properly exhausted his administrative remedies, and this lawsuit is timely filed within 90 days from the receipt of his notice-of-right-to-sue letter from the EEOC.

## COUNT I:
## TITLE VII DISCRIMINATION CLAIM

20. The allegations of paragraphs 1-19 are realleged as if fully set forth herein.

21. By virtue of his status as a black man from Nigeria who is also an ordained minister, Rev. Nnorom is entitled to Title VII's protection against discrimination based on his color, race, national origin, and religion.

22. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or *otherwise to discriminate* against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of" the above categories.

23. As is clear from the allegations stated herein, Rev. Nnorom was specifically discriminated against on the basis of his race, color, national origin and religion. Among other things, VUU removed him from teaching his class and then refused to issue him a new teaching contract as a result of these protected factors.

24. As a direct result of the VUU's discrimination, Nnorom has been caused to suffer the loss of potential occupational opportunities. Additionally, Rev. Nnorom has

suffered personal injury, anxiety, emotional distress, personal and professional humiliation and embarrassment as a result of the VUU's actions.

25. Further, VUU's actions constitute gross, wanton, malicious, reckless, and/or intentional violations of Rev. Nnorom's rights, thus entitling him to punitive damages.

## COUNT II:
## TITLE VII RETALIATION CLAIM

26. The allegations of paragraphs 1-25 are realleged as if fully set forth herein.

27. Under Title VII, it is unlawful for an employer to retaliate against an employee for engaging in protected activity under the Act.

28. Here, Rev. Nnorom engaged in protected activity under Title VII by filing an EEOC Charge against VUU based on its discrimination against him.

29. VUU then unlawfully retaliated against Rev. Nnorom for engaging in this protected activity by refusing to allow him on the VUU campus.

30. As a direct result of the VUU's retaliation, Rev. Nnorom suffered the loss of potential occupational opportunities. Additionally, Rev. Nnorom has been caused to suffer personal injury, anxiety, emotional distress, personal and professional humiliation and embarrassment as a result of the VUU's actions.

31. Further, VUU's actions constitute gross, wanton, malicious, reckless, and/or intentional violations of Rev. Nnorom's rights, thus entitling him to punitive damages.

WHEREFORE, Plaintiff requests this Honorable Court to order, adjudge, declare and decree that:

    a.    As to Count I, Plaintiff be awarded compensation for loss of salary and other benefits, including back pay, front pay, and all fringe benefits to which he would have been entitled to had his employment not been unlawfully ended by VUU.

    b.    As to both Counts, Plaintiff be awarded compensatory damages for his pain and suffering, reputational damage, emotional distress, stress, and anxiety.

    c.    As to both Counts, Plaintiff be awarded punitive damages.

    d.    Plaintiff be awarded pre-judgment interest;

    e.    Plaintiff be awarded post-judgment interest;

    f.    Plaintiff be awarded costs; and

    g.    Plaintiff be awarded all such other further and appropriate equitable relief.

**A TRIAL BY JURY IS DEMANDED.**

    REV. COLUMBA NNOROM, Ph.D.

By:    s/ Richard F. Hawkins, III
    Virginia Bar Number: 40666
    THE HAWKINS LAW FIRM, PC
    2222 Monument Avenue
    Richmond, Virginia 23220
    (804) 308-3040 (telephone)
    (804) 308-3132 (facsimile)
    Email: rhawkins@thehawkinslawfirm.net

    Counsel for Plaintiff